CRAIN, J.
|2The defendant, Eddie Joseph Matthews, III, was convicted by a jury of possession of a legend drug (Viagra) without a prescription and possession of methamphetamine. See La.- R.S. 40:967(C); La. -R.S. 40:1238.1. - He admitted to the allegations of a habitual offender bill- of information filed by the State and was then adjudicated a fourth-felony habitual offender. For the legend drug conviction, the defendant was sentenced to three years imprisonment at hard labor. For the, methamphetamine conviction, the defendant received an enhanced sentence of twenty years at hard labor without benefit of probation or suspension of sentence. The sentences were ordered to run concurrently. The defendant appeals, challenging the trial court’s denial of his motion to suppress the drug evidence. We affirm.
FACTS
On August 30, 2014, Deputy Bryan Estes with the St. Tammany -Parish Sheriffs Office investigated a complaint that a male and female had attempted to purchase prepaid gift cards at the Dollar General Store on Fremaux -.Avenue in Slidell, using numerous credit-cards that were declined. The store clerk who reported the suspicious activity advised Deputy Estes of the defendant’s name, which was on the driver’s license she had checked, the description of the SUV the defendant was driving, and the license plate number.’
A short time later, Deputy Estes .spotted the -SÜV matching the store clerk’s description at the Dollar General store on Gause Boulevard. Deputy Estes parked his patrol car directly behind the SUV and waited for backup. Minutes later, the defendant walked out of the Dollar General store and placed several bags of merchandise in the SUV through the rear passenger door. Deputy Estes got out of |3his unit and called out to the defendant. While speaking to the defendant, he avoided eye contact, instead looking between the storte, the SUV, and the road, which raised Deputy Este’s suspicions. ' After advising the defendant" of his Miranda rights,[1] Deputy Estes conducted a pat-down search and felt a large bulge in the defendant’s pocket, which he suspected was the credit cards. At Deputy Estes’s request, the defendant removed fifteen credit cards and three prepaid gift cards from his pocket. The defendant told Deputy Estes he was buying presents for the child of his girlfriend, and indicated that his girlfriend was in the SUV.
*1083 A backup deputy arrived and stayed with the defendant while Deputy Estes approached the SUY from the rear on the passenger side. Deputy Estes described the windows of the SUV as being “completely blacked out with tint.” After knocking on the front passenger door and receiving no response, Deputy Estes opened the door to make contact with the female suspect. Upon opening the door, Deputy Estes detected the odor of marijuana and observed a bag of marijuana next to three pills wrapped in céllophane in the ceiiter console. The marijuana and pills were seized, and the pills' were later determined to be sildenafil (Viagra) and methamphetámine. The defendant was arrested for possessing the drugs. No one was inside the SUV, and the female, Je-anekia Robinson, was arrested shortly thereafter when she exited the store.
SUPPRESSION OP THE EVIDENCE
The sole issue on appeal is whether the •trial court correctly denied-the defendant’s motion to - suppress the drug evidence seized from the SUV. The | ¿defendant argues that-the drugs should have been ■suppressed because they were seized as the result of an illegal search.
When a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court’s discretion, that is, unless such ruling is hot supported by the evidence. See State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 280-81. However, a trial court’s legal findings are subject to a de novo standard of review. State v. Hunt, 09-1589 (La.12/1/09), 25 So.3d 746, 751. In conducting its review, an appellate court may consider not only the evidence adduced at the hearing on the motion, but also all pertinent evidence given at the trial of the case. State v. Leger, 05-0011 (La.7/10/06), 936 So.2d 108, 122.
The Fourth Amendment to the United States Constitution and' Article I, •Section 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. It is well-settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the State can affirmatively show -that the warrantless search and seizure was justified by one of the narrowly drawn exceptions to the warrant requirement. See La.Code Crim. Pro. art. 703 D; State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330, 335.
The right of law enforcement officers to stop and interrogate someone reasonably suspected of criminal conduct is recognized by both federal and state jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Duere, 604 So.2d 702, 706 (La.App. 1 Cir. 1992). A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions. La.Code Crim. Pro. art. | fi215.1(A); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Reasonable suspicion to stop is something less than the probable cause required for an arrest, and the reviewing, court must look- to the facts and circumstances of each ease to determine whether a detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights. State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, 1269.
The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Payne, 489 So.2d 1289, 1291-92 (La.App. 1 Cir.), writ denied, 493 So.2d 1217 (La.1986). The detaining officer must have *1084 knowledge of specific, articulable facts which, taken together with rational inferences from those facts, reasonably warrant the stop. State v. Flowers, 441 So.2d 707, 714 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984); State v. Turner, 500 So.2d 885, 887 (La.App. 1 Cir.1986). The officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable', and deference should be given to the experience of the officers present at the time of the incident. State v. Bell, 14-1046 (La.App. 1 Cir. 1/15/15), 169 So.3d 417, 422.
Deputy Estes, upon seeing the defendant matching the store clerk’s earlier description exit another Dollar General store, had reasonable suspicion that the defendant may have committed the crime of using fake or stolen credit cards to purchase items. At that time, Deputy Estes had the right to conduct an investigatory stop and question the defendant. See La.Code Crim. Pro. art. 215.1(A); La. R.S. 14:67.16; 18 U.S.C.' § 1029; Terry, 392 U.S. at 22-23, 88 S.Ct. at 1880-81. As part of that stop, Deputy Estes was justified in patting down the [ ¡-.defendant, which led to the discovery of approximately fifteen credit cards in the defendant’s pocket.
Deputy Estes had earlier been informed by the store clerk that a female was with the defendant. That information was confirmed by the defendant who told Deputy Estes his girlfriend was in the front passenger seat of the SUV. Upon learning this, Deputy Estes had the right to order the female suspect out of the vehicle to ensure his safety. See Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). While ordering passengers -out of cars may be a slight inconvenience, it is not a serious intrusion upon privacy interests. State v. Cooper, 43,809 (La.App. 2 Cir. 1/14/09), 2 So.3d 1172, 1178; see also State v. D.avis, 452 So.2d 1208, 1212 (La.App. 5 Cir.1984).
Deputy Estes approached the passenger side of the SUV and found the windows tinted 'to such a degree they were “completely blacked out,” preventing him from séeing if the female suspect was in the SUV. After knocking oh the car door and getting no response, he opened the door but did' not find the' female suspect'.
The defendant argues that Deputy Estes should have looked though the front windshield of the SUV to locate the female suspect. Deputy .Estes testified that in accordance with his training and to best ensure his safety, he approached the SUV from the rear and proceeded to the front passenger door.; He explained:
Any time you make a traffic stop, or you approach any vehicle, you are in danger. No matter what part of the vehicle you approach.
Being a training officer, going through multiple training classes, you learn the best ways to approach vehicles. It’s not by the front. When you walk to the front of a vehicle, the person inside that vehicle has more view of you th[a]n you do of them, even with a clear windshield. It’s just not safe.. You always approach from the rear, whether it be the driver’s side or passenger side.
|7Her being in the passenger side, you always want to approach the side that they are on. That’s why I approached from the passenger side. I get to the point of the vehicle I’m already wedged in between two vehicles. Which isn’t safe. I’m at a,choke point. You are either going to go all the way and check to see if she is in the vehicle or put yourself in more harm by going to the .front of the vehicle. Therefore, I didn’t.
I opened the door to make direct contact with her. That way, I had full control of her if she was, you know, to *1085 present a-gun, weapon; or anything like that. -.That’s why you. don’t go to the front. . •
Under these circumstances, and considering that the heavily tinted windows added to the uncertainty and danger of the situation, we find that Deputy Estes acted in an appropriate and reasonable .manner. See La. R.S. 14:23; New York v. Class, 475 U.S. 106, 118, 106 S.Ct. 960, 968, 89 L.Ed.2d 81 (1986); United States v. Pierre, 958 F.2d 1304, 1308-10 (5th Cir.), cert. denied, Harris v. United States, 506 U.S. 898, 113 S.Ct. 280, 121 L.Ed.2d 207 (1992). In State v. Cure, 11-2238 (La.7/2/12), 93 So.3d 1268, 1270 (per curiam), cert. denied, — U.S. —, 133 S.Ct. 549, 184 L.Ed.2d 357 (2012), our supreme court found that -a- detective had reasonable suspicion to initiate an investigatory stop of a vehicle and its occupants, and that he and; another- detective,also .had the authority to order both the driver and the passenger to step out of the car, without any particularized and articulable basis for believing that the occupants posed a risk to their safety. The court reasoned:
Given [the detective’s] lawful authority to order the' occupants out of the car, we fail to see how her act in opening the door of the Camry, thereby asserting unquestioned command of the situation, even marginally increased the degree of intrusiveness on the privacy interests of the driver occasioned by the officer’s direct order to exit the vehicle.
Cure, 93 So.3d at 1271.
In this case, the defendant told Deputy Estes the female suspect was in the SUV. After knocking and. getting no reply, Deputy Estes opened the door.. Having 18the right to order the passenger to exit the vehicle, opening the door when no one responded to his knock was reasonable and did not increase the intrusiveness on the privacy interests of the driver.
After opening the car door, Deputy Estes detected the odor of marijuana and saw a clear plastic bag of marijuana in plain view in the center console. He then leaned into the . vehicle to see if the female suspect was in the back seat and noticed the three pills next to the marijuaná. According to the plain view doctrine, if police are lawfully in a position from which they view an object that has an incriminating nature that is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. Horton v. California, 496 U.S. 128, 136-137, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990); State v. Leger, 05-0011 (La.7/10/06), 936 So.2d 108, 155, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). We find the “plain view” exception to the warrant requirement applies and the seizure of the drugs that were openly visible in the vehicle’s console was permissible.[2] See State v. Arnold, 11-0626 (La.4/27/11), 60 So.3d 599 (per curiam). The trial court correctly denied the defendant’s motion to suppress.
CONVICTIONS, HABITUAL OFFENDER ADJUDICATION, AND SENTENCES AFFIRMED.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Deputy Estes also had probable cause to conduct a warrantless search of the vehicle after smelling marijuana upon opening the door. See State v. Waters, 00-0356 (La.3/12/01), 780 So.2d 1053, 1058 (per curiam); State v. Garcia, 519 So.2d 788, 794 (La.App. 1 Cir.1987), writ denied sub nom., State v. Rodriguez, 530 So.2d 85 (La.1988).